Good morning, Your Honors. Robert Rizzotti for the appellant, Marilyn Valois. I'd like to reserve three minutes for rebuttal. Very well. As Your Honors undoubtedly know, this is a very simple one-issue case, whether a legal separation agreement is a quadro. The district court held that the legal separation agreement was a quadro, even though it makes no reference whatsoever to any plan and no way to identify a plan, and even though it specified that the husband would maintain life insurance in the amount of $800,000 and the policy in question, the plan that they claim applies, only provides benefits of $493,000. The district court's decision is clearly wrong. It doesn't comply with the law, and it misconstrues and misapplies the plain facts of the case. It's not the job of the court to render optional the mandatory statutory requirements of the quadro. These are, as the Supreme Court has stated, effectively a checklist, and one of the requirements is you have to clearly specify the plan to which the benefit applies. But the standard in our court is substantially complies, correct? Yes, this court has held the standard of substantial compliance, and in so stating it has held that the language of the DRO has to, in substance, identify the plan and meet the other requirements of the quadro. And I appreciate in substance allows some level of leeway, but it doesn't allow nothing. The reality in this case is that the language of the DRO, the legal separation agreement, simply states that the husband shall maintain and carry a policy of insurance in the amount of $100,000, naming the son as the beneficiary. It says nothing about an ERISA plan. It says nothing about an employer-provided benefit. It says nothing that you could use to apply to an ERISA plan or to any plan. It doesn't have inclusive language such as, as is, or all, as courts in other circuits have held is sufficient to clearly identify a plan. It simply says you have to maintain life insurance. Now, as I note in my opening brief, there are half a dozen district court decisions around the country have held quite specifically that that language, and in some of the cases the language is virtually identical to the language we have here, that language is insufficient. Those district courts are correct. But in order to rule in this case that the language of the DRO is a quadro, you have to find some reference to a plan in that language, and there simply isn't any there. The other issue, of course ---- Well, before you move on, Counsel, there's a reference to a plan, and the record is undisputed that there's only one life insurance plan. So why isn't that sufficient for implication to name that plan? That seemed to be the district court's reasoning. The logic of the district court is logically fallacious. Just because there's no reference to a plan, there's a reference to a policy in the DRO, just because there's a reference to a policy doesn't mean it refers to this policy. The language of the statute is quite specific. You have to refer, at least in substance, to a plan. The fact that you're referring to maintain a policy doesn't say whether you're maintaining an individual policy, a group policy, the actual language of the LSA. The DRO, as I understand it, was entered before the descenant started his employment at Micron. Is that right? Long before. So you're not suggesting that they needed to have somehow anticipated that he was going to work there. No. So what would have been language that would have been clear enough in your mind then? The language that could have been, Mrs. Kowalski had several options. One option was to draft the language so that it applied to any group or individual policy that Mark got. And so each and every and all, you include that kind of language and you apply it to employee benefit plans or to individual policies. But what if the parties did not want to say all? I mean, that's a different sort of implication. So are you saying that someone can't get the protections under this exemption unless they mention in the DRO that it has to apply to all policies? No. I'm saying that the ideal situation is you name the plan. If you don't name the plan, the second ideal situation is you identify the policies and plans to which it applies broadly. The third ideal situation, which was clearly available, and that was available to Mrs. Kowalski. And that doesn't happen here with the APOL? Why isn't it referring to something broadly? You're saying broadly with all. All or every. It doesn't. You have to refer. Referring to a policy is not referring to a plan. Referring to a policy is referring to an insurance policy. If you look at the exact language used in the LSA, it says he can't encumbrate, he can't. He's talking about an individual policy. And I would agree with you if he had multiple policies and it was unclear to a plan administrator which one he might apply. But if there's only one, why doesn't that make this a different situation? Because your logic is that because later on there was a policy, this language must refer to that policy, and that's not what the language says. It plainly misconstrues the language. The statutory language requires a reference to a plan. A plan is an employer-provided benefit. By definition, that's what the statute says. So the reference must be to some plan. It's not sufficient to say this policy. There may have been a policy in 2010, I don't know. There certainly were employee benefits because if you read the full text of the legal separation agreement, Mark was required to provide medical benefits for his son through his employment. I don't know whether there was then some sort of employer-provided benefits, but the issue is can you stretch language that says nothing about a plan and nothing about employer-provided benefits and nothing about all-encompassing to include a policy that was obtained a decade later? And again, you ask the question, what could Mrs. Kowalski have done? She had various options under the statute. The statute says even if the DRO is not a quadrant, you can go back to court and modify it. She could have gone to court whenever she wished and modified with the court's permission. What effectively happened here is that the district court modified the DRO, and there's nothing in the statute that permits a district court to modify a state judgment. Is there anything in the record that suggests she knew who the named beneficiary was on the policy? No. So then you're saying she could have gone and gotten an order to modify it, but wouldn't she have had to have known that the named beneficiary was not consistent with what he actually agreed to do earlier? She could have modified at any time in the 10 years to say this obligation applies to any insurance policy employee benefit plan that he obtains in any employment. She could have done that well before he was employed by Micron. She didn't do it. So what the district court said is because something happened afterwards, it necessarily refers to this plan, but that's a logical fallacy. There's no tie-in between this plan. And the analysis is followed, as I said, in half a dozen district court cases. I'm just trying to understand this. So your critique of the pro se drafted document is it said policy, not plan? Right. And the case you think turns on that? In part, the reality is that the language of the statute is not optional. As this court has held, the language of the statute is mandatory. In substance, you have to identify a plan, which is an employee benefit plan, to which the benefit applies. Does this language do that? There's no way you can parse this language to refer to the policy that ultimately was obtained by Mark Kowalski a decade after the fact. So in your mind, then, if the Micron policy had actually named the minor child, it still would not qualify? No. Because, again, let's say the Micron policy actually referred to the child rather than your client. Then it would. But, again, the language in the contract would be the same. It would be you said the issue here is it didn't specify a plan. Right. It still wouldn't specify a plan. It just happened to have a different person as the beneficiary. So if you have to specify a plan in 2010, why would it matter who's actually named in the eventual policy? Under your view of the case. For this to be a quadro, you have to identify a plan. Otherwise, you're not complying with the statutory requirement. That's what I'm saying. So at the end of the day, if the insurance policy in this case, through Micron, did not name your client, but actually named the minor child, assume those are the facts of the case. Mark designated his son as the beneficiary? Correct. Then we wouldn't be here. No, but would it be a quadro under your view of the case? It wouldn't matter. That's not my question, whether it matters. My question is, is that your understanding of what a quadro is, you would say it would not be. Because it doesn't identify the plan or have any basis. Okay. So even if we all know that this was what they intended to give it to the kid, under your view, it still wouldn't substantially comply. Correct. The court, as the Supreme Court has said, and the purpose of the quadro statute is not to talk about the intent of the parties. It's to talk about the language of the documents they write. If you want to read into the intent of the parties, then you're missing the point of the whole quadro statute. Congress didn't say all DROs are enforceable. Could have. Congress says as to insurance, it's safe in preemption. Congress could have said that all domestic relations orders are safe in preemption. It didn't do that. It said in order to be safe in preemption, you have to meet four qualifications and not meet three others. They didn't meet the qualification. There is no way you can parse this language to have this refer to a plan. And the other point is, obviously, the policy itself, the LSA itself specifies that there be $800,000 in benefits. The Micron plan only provides $493,000 in benefits. You can't convert $800,000 into $493,000. You can't say, well, she agrees to accept less. The statute says you look at the language of the DRO. You identify what the language says and you construe it. The language of the DRO is quite clear, $800,000. Well, the statute says whether the DRO does not require the plan to provide increased benefits. As I understand it, the LSA can't force Hartford to pay more than the coverage that was entered into. So how does the LSA here require Hartford to pay more than the $400,000? It requires $800,000. If you enforce the LSA. So someone could sue Hartford under the LSA and say, you owe, Hartford has to pay $800,000. No, to determine whether or not the LSA is a quadro. You have to ask. But, again, the statute says whether the DRO does not require the plan to provide increased benefits. There's nothing that requires. The plan doesn't require Hartford to pay more under its terms, does it? The plan does. It requires the $800,000 benefit explicitly. Which is an obligation on MARC. It's an obligation. If you construe it as applying to the plan, it's an obligation on the plan. In other words, if you enforce the LSA, you have an obligation to pay $100,000. You're not enforcing the LSA. You're modifying it. You're allowing the district court to do what district courts aren't allowed to do, modify the agreements of the parties. The plain agreement of the parties is $800,000, not $493,000. So in your view, if it was 700, if the policy actually purchased was $799,000, then it's a loser. It has to be $800,000 on the dot. Correct. That's what the parties agreed to. We don't modify agreements. I mean, courts are not supposed to modify agreements. Even though the standard in the Ninth Circuit is substantial compliance, you think that $799,000 would not be substantially compliant? Not substantial compliance because it's more. So what would be substantial compliance? Can you give us an example of what would be substantial compliance? Sure. For numbers? Yeah. I mean, how do you make a point that a different number, a bigger number is substantial compliance? Well, I'm just saying, like, it's like a 99.95% hit rate. It's not quite that high, but close to it. But that would not be substantial compliance. No. So it was $799,999.99. That would not be substantial. No. Because it's a different number. It's a higher number. I understand. Look, and I want to make sure you have time for rebuttal. But if the standard in the Ninth Circuit is substantial compliance, help me understand what that means. It's not perfect compliance.  Are you saying that $800,000 is in substance, $493,000? It is not. You could say $493,000 is a subset of $800,000, and it certainly covers it. So why wouldn't that be substantial compliance? That's putting the statute backwards. The issue under the statute is does the document, does the domestic relations order, require the plan to pay more than it's otherwise obligated to pay? And it does if you apply the DRO. If you say we can modify it, we can let the district court ignore it, we can rewrite it in the guise of interpretation, then, of course, it can say anything you want. But the point of courts and the point of judges is to enforce the agreements of the parties and to enforce the law, not to manipulate it. And so you think, just to go back to my earlier question, you think that this agreement between the two ex-spouses can be enforced against Hartford? Someone can go and sue Hartford and force Hartford Life to pay out $800,000 based on an agreement between these two individuals? No, because it's not a quadro. If it were a quadro, they could enforce it. You're saying that if there was a holding that this was a quadro, then Hartford would be obligated to pay $800,000? Right. If this were a quadro, then you'd have to enforce it as written, not as not written. It's not a quadro. That's why Hartford doesn't have to honor it. Okay. All right. I'll give you two minutes for rebuttal. Thank you. All right. Good morning, Your Honor. Peter Sessions on behalf of the appellees, Haile Kowalski, and acting as guardian for her son, E.K. Obviously, we're talking today about, you know, whether a domestic relations order is a quadro or not. And I think it's important when engaging in that inquiry to take a step back and look at the statute, the purpose of the statute, why it exists. You know, we all know about ERISA. We know it has expansive preemption over state law. And in many ways, that's a good thing because it makes it uniform for plan administrators. But what Congress determined with the Retirement Equity Act in creating these quadros is sometimes that's a bad thing. And in a nutshell, what Congress decided is that the decisions of separating couples governed by state law should be elevated above the federal rules governing plans. So what Congress essentially did was flip the structure and said, no, federal rules and beneficiary designations made under these federal rules are not going to be honored when we have valid state court orders that say something else. And so why did Congress do this? And it's very clear this court has addressed this issue numerous times, most prominently in the Oblomas v. Roper case where this court said, it's clear why Congress did this. We're concerned with the inequities that are suffered historically by women and children in divorce who are often economic victims. And so we've determined that we're going to create these quadros because these are necessary to protect their interests. And so that's the backdrop here. And that's why this court has adopted the substantial compliance approach to this statute. This court has said- Mr. Sessions, let's get into the meat of this. Counsel's point is that the LSA here says a insurance policy as opposed to all or something where, from the language of the LSA, it would encompass what's being contemplated here. Why is that wrong? Is there something defective about the fact that he just mentioned a policy and that's not sufficient enough to identify this particular policy to qualify? In this case, I think that's a distinction without a difference. And the district court addressed this issue in its order and said, if the facts were different, this might go the other way. This would be a lot trickier. But in this case, it's not tricky. The separation agreement talks about a policy of life insurance, and here that's what we have. We have a policy of life insurance. It's the policy insuring Micron's group plan. So I know appellant makes a big deal about the fact that the provision in this agreement doesn't say any or all life insurance. But under the facts of this case, it's effectively the same thing because there's only one policy. Let me ask this. There have been other circuit court decisions that have also applied substantial compliance. Have any of those cases involved a DRO that had similar language like a policy or a rather than any or all? Yeah, well, that's one of the problems with these cases, which is every separation agreement is different and has slightly different language. So I'm not aware of any case that's exactly like this one that uses this exact same language. But if you were to ask me, you know, what's the case that aligns most closely with this one, I would point the court to the Festini-Steele case, the Tenth Circuit case. You know, in that case, let me pull up the language. In that case, the language was the parties agreed to the following terms relating to all life insurance counts. Husband will carry life insurance on wife as beneficiary until daughter is 18 years of age. So really the only difference between this provision and the provision in our case is the word all. And for the reason I just mentioned, that's a distinction without a difference because there's only one policy here, so it is all insurance. Let me ask this. You know, part of the basis for this exemption is to make it easier on plan administrators to know what to do. Would a plan administrator be able to know from looking at the LSA that this policy should be paid out to the minor's son? Is it okay for us to infer that the administrator would know that this happens to be the only policy that Mark took out? And the answer is yes. This is clear enough. Because the statute is something of a balancing act, right? Congress is saying on one hand, yes, we want to protect spouses and children who are often the victims of divorce. But at the same time, we are, and the Sixth Circuit talks about this in one of their cases, we're trying to shoehorn this idea into ERISA, which is typically strict about everything. So there's kind of a mismatch there between trying to effectuate parties' intents but also make sure that they follow the rules. And in this case, you know, I think it's pretty clear that Hartford, when it gets this order, should know what to do. How would the plan administrator know that this was the only life insurance policy that it could be referring to? Well, we know that now. So there's no impediment to effecting it that way. I don't know, and I don't know if it's in the record, whether Hartford knew about whether there was other life insurance. But because there is no other life insurance, therefore the phrase a policy of life insurance in the separation agreement can only be referring to this insurance. I mean, because I take it you could have a situation where someone could have multiple policies with Hartford. Right. And in that situation, it would seem odd that there would be multiple policies and yet none of them would pay out because we can't figure out which is, if it's Hartford policy A or Hartford policy B. And since the LSA didn't say which one it is, they're out of luck.  And the district court talked about this too, and I think the district court is right. If this case were different, it could get messy really quickly. And fortunately, you know, we're not in that situation. You know, I would like to think that in that scenario that the parties would work something out. We always appreciate that, but yes. Well, I mean, this is one of the problems with the substantial compliance test, right? You know, in the law, we have this constant battle between bright line rules and, you know, fuzzier tests. And this court has said, and I think correctly, in this situation, we're going to have a fuzzy test. And the reason we have that is for two reasons. One, we're trying to effectuate Congress' intent in protecting these people. And also, this court has recognized the practicalities of divorce, which is when people get divorced, they're not legal sophisticates. Very often, they don't even have lawyers. The Kowalskis in this case didn't have lawyers. We can't expect them to know what a risk is or what quadros are. So what this court has said is, look, if we understand what you're trying to do and the language you use in your separation agreement is close enough, then that's good enough. We're not going to make you dot every I and cross every T. If we know what you're trying to do and it's pretty clear, then we're going to enforce it. What about counsel's argument about saying policy instead of plan or making some more direct reference to an employer-type plan? Well, I mean, the case law is pretty clear on this. And Appellate, I think, concedes this in the briefing, that you don't have to specifically name a plan for it to be enforced. The agreement doesn't have to say the Micron life insurance plan. It doesn't even have to say the employee's life insurance benefits, which is like the next level of abstraction up. And that's really what the Festini-Steele case, if you look at the language in the Festini-Steele case, that was upheld by the Tenth Circuit. I was looking at the record here, too. We have a plan, though, that administers a policy. So I'm not sure that the use of the word policy instead of plan is completely persuasive to me. Well, I mean, the way it's set up is there is an employee benefit plan that Micron has set up. And that plan, because they're not life insurance experts, they contract it out to Hartford. And so Hartford insures the plan with a policy. So there is a policy of insurance here. And that's the one that's at issue, the policy. Right. And as I said earlier, we cannot expect people like the Kolskys to understand how benefit plans are set up and administered and insured. It's very clear what they were trying to do. They were trying to protect their son by making sure that life insurance was available to them. And whether that's through an employee benefit plan or through an individual life insurance policy was clearly not important to them. So the fact that the benefit in this case comes from an employee benefit plan as opposed to an insurance policy, I don't think should make any difference in how we interpret what they were trying to do. And what is your reaction to counsel's argument about the second argument about whether the plan requires, whether the DRO requires the plan to provide increased benefits? Sure. Is it resolvable on substantial compliance grounds or that the LSA doesn't require Hartford to pay out more or something else? What the statute says is it's not a corridor if it requires the plan to pay out more. And if the court looks at this statutory provision, it's clearly designed, it's clearly pointed at pension plans. It's clearly designed to avoid a scenario by which benefit plans are somehow forced to shoulder higher burdens through actuarial mischief in how pension benefits are calculated. Because pension benefits are complicated. They're paid out over time. Sometimes the amounts change. They're built in actuarial assumptions. In fact, the statute uses the word actuarial, which makes it clear that it's aimed at pension issues. And so, you know, that's simply not what we have here. This is not a pension case. This is not a case where people are, where anyone is trying to make Hartford, the Micron plan, pay more than the amount that's available under the plan. Everyone agrees what the amount is at issue. No one's contending that Hartford's liable for, or the Micron plan is liable for more than that. And the fact that the numbers don't line up is not controlling. You know, in a perfect world, would Mr. Kowalski have gotten $800,000 of coverage for his son so that it lined up neatly with what's in the legal separation agreement? Sure. But he didn't do that, and it's not even clear that he was able to do that through the Micron plan. You know, typically, insurance, employee life insurance benefits are based on some, are based on whatever the person is making as part of their salary. So he probably couldn't even get $800,000. But that doesn't mean that the separation agreement is somehow forcing the plan to pay more. No one's saying that the plan should be doing that. And it's funny, when I was preparing for this argument, the example that I came up with was the exact one that you just came up with, which was what if he was able to get $799,000 worth of insurance? Under Appellant's argument, because $799,000 is not $800,000, therefore the son gets a zero. And that can't be the right result. There's no authority. I'm aware of no justification, no case law for enforcing it in this way, especially under a provision of ERISA that is specifically designed to protect children so that they get the benefits that they're entitled to. The statute's not meant to be, it's not meant to set up a series of traps for the unwary. The whole point of the substantial compliance doctrine is to try to effectuate what people are trying to do in a way that's consistent with ERISA. It seems to me there's a little bit of a conflation between the requirement that the DRO identify the plan by the amount, and it must not require the plan to pay more to provide increased benefits. So I think what you're saying is the $800,000 was close enough in terms of an identifier under the substantial compliance rule, but it doesn't actually spell out that the plan has to pay $800,000. Well, these are separate provisions of the Quadra statute. One provision says it has to clearly specify the plan, and this other provision says it can't force the plan to pay more. And so what we're saying is that both of those things are met here. They've done enough to clearly specify where this benefit should come from, and at the same time they're saying how much they'd like the son to get, but at the same time they're not saying that the plan has to pay that. Well, and they've been – Hartford's deposited the money, and they're out of the case. That's right. So I'm not sure I totally follow how they would have to pay more unless this court were to order them to pay. That's right, and that's what the district court said in its order. The district court said, look, no one's disputing what the amount at issue is here, and Hartford's gone. And she disclaimed seeking more than $493,000, correct? Yes. She specifically filed a declaration that said, I'm not seeking more than that. Unless the court has further questions, I think. All right, thank you. All right, thank you. Two minutes. Obviously the court's concerned about substantial compliance and insubstance. As this court held in Hamilton, in which the order required the husband to designate children but didn't require any action by the plan, in the Hamilton case the court said, this court said, that wasn't a quadro. We have exactly the same facts here. There is no obligation by any plan to do anything. So where the court articulated the insubstance standard in Tice and in Hamilton, it actually applied to the facts that we have in front of us. There is nothing here that ties this benefit or this policy obligation to a plan. It's simply make-believe. Now, if courts want to make-believe that facts are there and construe statutes as if they don't exist, and that's what the Ninth Circuit said very specifically in its insubstance analysis, that's what this court said. It said, look, these are not optional requirements. If you're going to make the identification of a plan optional, you're going to create terrible precedent for other courts. You're going to find people arguing everything, no matter what it says, is sufficient to constitute a quadro, and it isn't. The statute is a policy standard that says we're going to protect wives and children, but it also says we have rules. The rules are clear-cut, and one of the rules is clearly identify the plan. This LSA does not do so. The other issue is you're talking about, well, nobody's requiring Hartford to pay more. The issue on evaluating whether or not this is a quadro is whether, if you enforce it, it would require paying more. Just because one party said, well, I'll modify it, what effectively you did or what effectively the district court did was allow one party to modify an agreement. We don't enforce agreements like that. The case law is clear that a DRO is an agreement between parties. Do we say, okay, we're going to change it and allow a federal court to change a family law order? If you approve this, then you will be allowing federal courts to change state court orders at will. That's wrong. It's bad policy. This decision is wrong, and it should be reversed, and my time is up. Thank you, counsel. Thank you both for your briefing and argument, and very helpful. And this interesting case, this matter is submitted.
judges: OWENS, SUNG, SANCHEZ